Good afternoon, ready to call the first case for the afternoon, Delaware and Hudson Railway et al. versus Moeller Manufacturing. Let's go ahead. Good afternoon, may it please the committee. I represent the appellants, the Canadian Pacific Railway companies involved in this case, Soo Line, Delaware and Hudson Railway and Canadian Pacific. I'd like to reserve five minutes of my time for rebuttal if I may. The ultimate issue in this appeal is relatively simple. The issue is whether the verdict that the jury returned on the special verdict, as we argue and as we have shown in our papers, then the appellants are entitled to a new trial because the verdict provided by the jury was irreconcilably inconsistent. Can I ask you to turn to appendix page 830 on this? I'm sorry, I didn't hear you on it. Appendix 830. And the reason I'm asking you to do that is that I'm curious about something the district court said. This is at page four of the district court's post-trial opinion paper in the appendix. It says, toward the bottom of that second full paragraph, the court concludes that the verdict form was a general verdict with answers to written questions and is thus governed by rule 49B. Is it pronounced Knoedler or Kneedler? Kneedler. Since Kneedler and CP each proposed 49B remedies for the inconsistency, this conclusion is uncontested. How did the district court get the idea that this was uncontested? I don't know, Your Honor. In the post-trial briefing, we did refer to 49A. I believe what the court was interpreting was that because we asked for the remedy that's provided in 49B, there is no remedy specifically provided in 49A, that we therefore conceded that 49B was the appropriate standard. That's not what we argued, that's not what we meant, and I think that's a very limited reading of what the remedy for rule 49 should be. The remedy in 49B does say that you have three options, one of which is a new trial. But we did not concede in any way that this was a rule 49B verdict. We always said that it was a special verdict, and a special verdict is treated differently than a general verdict. I don't know what else we would have referred to specifically for the remedy for an inconsistent special verdict other than what was in 49B. There are cases that say that the rule 58 remedy is inappropriate. Since you had a hand in crafting this, and the district court of course made a point of saying this too, how is it that you're in a position to complain about the consequences of the I did not craft the verdict form, as you well know. It's a combination of discussions from both parties and a final decision by the court. To be honest, I don't think anyone recognized that there was a way for the jury to get this wrong in the way that they did, and in fact it does violate one of the specific jury instructions that said that you can only find Needler liable if you find that they a violation that was a cause of the accident. So everybody missed the possibility in going through the specific special verdict form that the jury could do what they did, but it was covered by the instructions as well, and had the jury followed the instructions, they of course would not then have filled out the percentages of fault that they did in the verdict form. But there were proposed, there was a proposed form at A194, and another one at A190 that said if you answered yes, how did the final form kind of get there? Again, it's, and I don't mean to be dismissive, it was the result of quite a bit of negotiation among several attorneys and the court, and quite frankly, at that point, we all assumed that the jury was going to find that a violation of the LIA occurred, and that it was a cause, certainly that's what the railroads thought, because that's what had been argued, that's what we had moved the court for, that's what everyone had concluded as we were going through all of this. But isn't this... If it never occurred to you, you would lose. Pardon me? If it never occurred to you, you would lose on that. Not this badly. Isn't this form a little bit unusual in that it's almost like a hybrid. It doesn't ask strictly factual questions, because the apportionment of liability is going to be taken by the court, and that's really going to be the verdict. It's going to allocate fault, and that's going to be the verdict. So it's not the type of situation where you have fact, fact, fact, fact, and the judge, if the judge disagrees, knocks out one and, you know, changes it. In some ways, the judge was correct that this is somewhat a general verdict with specific factual questions. How was that totally in error on the part of Judge Rothstein? Because any time you are assigning fault to a variety of entities, including two of which who are not parties, you are making specific findings of fact. You are not providing a general verdict. There's no way... How's that? If you're saying you're at fault and you're at fault and you're at fault by these percentages, you are making a statement about liability. You are making an assertion that there's liability. You're just being slightly more specific in saying the percentages by which liability is shared. Why is that not a statement of liability just the same as any other general verdict statement of liability? Nowhere else in our court system does the court, unless the court is sitting as a fact finder, assign percentages of liability. That is a specific factual act for the jury or the judge as fact finder to determine. This would be different in your mind if before assigning out the percentages, it had said state which party is liable or both? Yes, because that would have been a general answer. The fact that it didn't say that, but it said state percentages of liability so that they could have filled in, you would have gotten to exactly the same spot. That formulation is what makes the difference in your mind. The formulation, I'm sorry, you mean the formulation about the percentage of liability? Right. Yes. That is what makes the difference between a special and a general verdict. If it's only yes or no on the law, then the court can decide and then it's yes or no. But you have to have a factual finding in order to find one party 70 or 25 or five or zero. But general verdicts with written questions do have specific factual findings. It's in their nature. Right. But it's not that you don't have any fact findings, it's that you do have an assertion of liability. Isn't that the distinction? Not exactly. A finding of a specific percentage of fault is, again, something that a court cannot do. You can't do that legally. When you're finding fault or not, it's either yes or no, which is what a general verdict is. When you are assigning specific percentages of liability, that can only be a factual finding. A court sitting as a court... How is that consistent with our ruling in Frank C. Polera Group then? The Frank C. Polera Group, Your Honor, was a different issue altogether in that there were specific questions of liability that the jury provided yes or no answers to. And that's different than the specific questions that the jury got in this case, which were, did Needler violate the LIA? Did the violation cause the accident? Yeah. When you get to question four, that's the one we're focused on. When you get to question four and it says, who's got what share of fault? Sure. The difference is that in Polera, there was no specific question asking for a percentage of fault against the entities. It's not implicit. It's not absolutely implicit in question four. I mean, you'd be writing zeros if there was no fault for a party. Exactly. That's right. But because they found fault for a party and they found this specific fact-finding of whether a party was 75 or 50 or 25% at fault, that itself is a fact-finding. A court cannot make a fact-finding that one party is 75% and one party is 25% liable, not sitting in law. You can, if you are the fact-finder, that that is not what a general verdict is, and a general verdict gives you all or nothing. But as a matter of law, we know the response to question number one, that they didn't violate the LIA, and number two, answer no. We know as a matter of law that the 5% cannot stand. Isn't that correct? Correct. And that's what Judge Rothstein determined. It cannot stand given the two answers that they gave, which shows that the answer that they gave on number four was inconsistent with the answers that they gave on one and two. It was inconsistent and cannot stand. It cannot stand. If they found that, then 5% cannot be, as a matter of law. Correct. Which is why the only recourse is a new trial. Because you can't enter judgment on that when the jury has been... There's three recourses given under 49B, but that's right. That kind of comes down to how you characterize this. Let me just follow up, though. On 49A, there is no provision regarding inconsistency, correct? Correct. Which is why we cited Rule 49B-3 for the options that the court had available to it. So why can we not say in this situation, given what happened here, since the answer to four is erroneous as a matter of law and it gets stricken, we credit the answers to one and two, and there has to be judgment. There's no other way. Because that's not what you do when the question is a special verdict versus a general verdict. So what you've done there as the court is you have selected one over another. Well, Rule 49A doesn't say you have to have a new trial. Case law may, but it seems it could be distinguishable also. Sure. What are the other remedies then, which is the question that the case law kind of asks us? The case law suggests that if you have a special verdict that is inconsistent, then the case law suggests you are entitled to a new trial. It's different if you've got a general verdict or a general verdict with questions, and that's when the three options come into play. And that's indeed the question that's before us, right? I'm sorry, didn't hear you. That's indeed the question that's before us. But you reserved, you chose to reserve five minutes for rebuttal, a substantial amount of time. Do you have any questions? No. All right, then we'll have you back on rebuttal. Good afternoon. May it please the court. Daniel Benz from Needler Manufacturing Council. The issue in this case is whether we have a general verdict versus a special verdict. I think it's very clear from the lower trial court's position that all along this was to be a general verdict. We have the three questions of fact. Why is it called a special verdict form? I think that the special verdict form is not dispositive and is really not indicative of the actual contents of that form. Well, is Needler's liability ever posed? I'm sorry? Is Needler's overall liability ever posed as a question? I'm sorry? Is Needler's overall liability ever posed as a specific question? Needler's overall, yeah. I think that when you look at the questions of fact that were asked, well, did Needler violate the LIA? No. Any violation of the LIA by Needler caused the damages in this case? The answer is no. Then as a legal conclusion. They're the elements. I'm sorry? They are the elements. Sure. And then the jury was asked to apply those findings of fact and reach a verdict. And that's what question four actually is. It's a finding of fault. It's a finding of legal responsibility based on the findings of fact. And I think the trial court hit the nail on the head when they said that follows the form. Well, nobody objected to this in the aftermath of the jury's return. And in the post-trial decision, the judge sort of tagged CP with having failed to object. But you folks didn't object either. Nobody from Needler stood up and said, wait a second, there's an inconsistency. Your Honor, I was at trial and I did stand up and I asked the judge to mold the verdict in accordance with 49, Rule 49. After the jury was discharged. After the jury had been discharged. Correct. That's the point. After the jury had been discharged. Correct. Nobody stood up before the jury was discharged. I mean, that's the dividing point. We wouldn't be here if it weren't that. Sure. Okay. Nobody stood up and said, wait a second, there's an inconsistency here before the jury walked out. So given that, that that's the case, why should the, why should the verdict be molded in your favor? Why should that, why should the failure to object fall entirely on CP and not fall equally on Needler and the result be a new trial? Well, because the, the answer to that is that the judge is empowered and has the authority under 49B to make that, to mold the verdict, to be consistent with the, with the factual findings. And that's what the judge did in this case. Technically, both parties, according to the trial judge, waived their 49B motions because we did so after the jury had been dismissed. I don't think there's any question about that. Neither, neither Needler nor CP can go back and, and, and reinvent that part of the, of the trial. I think it's very clear from the trial transcript that the jury had been dismissed and that my motion to mold the verdict was made after the jury had been dismissed. And, and the trial court points that out, but if it's deemed to be waived as to Needler, it would be deemed to be waived as to CP as well. So, you know, I'm willing, you know, I'm willing to concede the fact that, that under the rules, that both of those would be waived. But I think that the judge is empowered on its own to mold the verdict without a motion. And that assumes, of course, that you're talking about a Rule 49B verdict. Correct. Not a Rule 49A verdict. Well, a Rule 40, as you know, Rule 49A does not set out any specific relief. Right, but the case law talks about what is the relief, and the relief is generally understood to be a new trial, right? Well, it's, it can be understood to be a new trial. It doesn't mean that the judge is compelled to give a new trial, just as you're not compelled to give a new trial. You know, there's, there's overreaching theories in, in case law that, that, that allows the judge wide latitude in finding relief, as justice requires, to avoid a miscarriage of justice, to, you know, give the prevailing party. So is, is part of your argument that it doesn't matter whether it's 49A or 49B? Well. You should still get the benefit of the 49B options, even if this was a special verdict? Well, I, I think that, I think that if we, if we extend the argument to that, to that length, then that's what I would ask the court to do. But I'm not willing to concede my 49B arguments, because I think it's fairly clear that the judge, that the jury was told during jury instructions that they were going to make findings of fact, they were going to apply those facts to the law, that they were going to render a verdict in favor of one person or the other. Now, where in the jury instructions did it say they're going to render a verdict? I didn't see that. Jury instructions are pretty choppy. If you look at, I believe it's, you're going to have to wait till you're at the podium, sir, because this is being recorded. Sorry. So if you look at page 15 of our brief, the jury instruction, and you'll find this at A329, A337, and then A338, 39, A342, A347. I'm sorry. It's page 15 of Needler's. Okay, I'm looking at those appendix pages. And it says, at this course, the first instruction the court gave the jury stated, it is your duty to follow the law as the judge, and it is said in every case, isn't it? I mean, by your lights, everything's a general verdict then, because in every case, it's boilerplate for a judge to tell a jury, it's your job to reach a just verdict. But the special verdict. Well, as Attorney Patee said, you know, the attorneys went back and forth. We negotiated this, presented our jury instructions that we wished the judge to give to the jury. And then the judge makes the decision on which jury instructions to give or not give. Sure. But those are things we submit to the jury. Yes, but that's really not responsive to the question I'm trying to put to you, which is your argument is the judge said you have to reach a just verdict, ergo, this was a general verdict. But the judge always tells the jury, you've got to reach a just verdict. That's I'm not aware of any case ever in which a judge hasn't used that kind of language, because that's just standard boilerplate when you're instructing a jury. It's like saying, welcome to the courtroom. Well, well, I think that had, if that is the boilerplate type of jury instruction, had CP intended this to be a special verdict, they certainly could have presented that to the court, had every opportunity to say. It says special verdict on the form. Well, you know, we can argue about why it says special verdict on the form. I mean, I don't know. We can, that's what we're here for. Sure, I agree that that's, that's one small piece, but that doesn't make it a special verdict, right? It's just a special verdict. Address the Malley-Duff case, will you? That is a case from our circuit in which things were said, I think, beginning at page 144, it lays out the verdict form in footnote three, and it asks questions like, crown life liable or not liable, agency holding liable or not liable, Clark Burton liable or not liable. These, these are, it goes through this one at a time for the various claims, and the court comes to the conclusion that that's a special verdict form. How is that different in a meaningful way from the verdict form here? How, how, how do we distinguish Malley-Duff or do we need to? Well, I think in that case, your honor, what we have is a series of questions that are just like the first three questions in this case. Oh, no. They're, they're asking about liability. They're not, they're not saying, did you violate this statute or did you, were you negligent in doing X? It's a specific question about liability. Well, as you, as you know, each, each individual claim has its own, has to meet its own standards. You know, for negligence, we have duty, breach, causation, injuries, right? So in this particular case, because we're talking about the LIA, we needed to have findings of fact, just like in the Malley case, they had to have findings of fact as it relates to each particular claim. And those are not the same claims that we have in this case. Yeah, I know they're not the same claims. I'm just trying to rationalize. You may, you may very well be correct that this is a general verdict, that Judge Rothstein correctly viewed this as a general verdict, that she thought question four was a statement about liability and therefore was properly viewed as a general verdict with written questions associated with all the other questions. I'm just asking you, I'm looking at the Malley-Duff case, seeing how that verdict form is framed, and then reading the conclusion that this was, quote, more properly considered a verdict returned under 49A special verdicts rather than 49B, and I'm wondering how we square that up with what we got here. Well, I think in the Malley-Duff case, you have a clear example of when the judge applies the findings of fact to the law, and the judge makes the ultimate verdict, the decision in that case, so he takes... Also, it's because the liability is stated. Clark Burton is liable or not liable as to a specific claim. Sure. That's not a, that's not a, something for the judge to do, that's the jury's finding it. Sure. And upon a finding by the jury as to that fact, the judge has to apply the law in that case as the law says for the judge to apply. In this case, the judge did not have that, did not reserve that for herself. She did not reserve a finding of law for herself, she specifically instructed the jury to do that. In the Malley-Duff case, what was left for the judge, what do you think was left for the judge to do? Look at the footnote three and tell me what was left for the judge to do other than to enter a verdict? And say, okay, this party's not liable, the jury said so. This party is liable, the jury said so. This party isn't liable, it said so. There was, what was the thing you think the judge was going to do in terms of applying law other than say, hey, that's the verdict, you win, you lose. And I agree, it's a very similar case in which questions of fact were asked as to specific claims that were made in that case. More than questions of fact, questions about the ultimate issue, liability. That's what makes this Malley-Duff case hard for you and why I'm trying to get you to come to grips for it. The court had a verdict sheet in front of it where it wasn't questions of fact, it was questions on the ultimate issue. Liability or not liability as to each claim. And yet, the conclusion was, this is 49A. And I agree with your interpretation of that case, but any time you look at this, this issue of whether it's a 49B or 49A, there has to be some opinion gathering as to how you see that. How would we distinguish it? Think about it this way. The jury was not asked. If you were in our position, writing the opinion so that Needler wins the way you want, how would you say we would, how would you distinguish it? I would say in the Malley-Duff case, there is no showing that the jury was actually asked to render a verdict or to apply the factual issues to the law. And that's where the judge comes in and does that for the jury. And that wasn't done in this case. And, you know, it doesn't show that in the actual case file about what the jury instructions were or were not in that case. But the jury instructions clearly in the Malley case, from the verdict, it was clear that they were asked to issue decisions of fact. They were not asked to render a verdict. They were not asked to apply those findings of fact to the law and issue a verdict, as was in this case. And, you know, I think the jury instructions are very important. And the cases show that, that it's not, you can go beyond the four corners of the verdict slit, look at the jury instructions. Was the jury asked to apply the findings of fact to the law and render a verdict? And that's exactly what the judge here instructed the jury to do. When you're done answering the questions, you will be asked to apply the law and render a verdict. And, you know, in favor of one party or the other, though, this case was a little more complicated because we had a non-party was on the verdict slit. And we had a party Durham that didn't come to trial, but were essentially a defendant in the case. And then the apportionment of that fault was necessary. But it does not mean that the jury did not apply the law to the facts and render a verdict in this case. OK, thank you. Thank you, Your Honor. I think the court touched on. Excuse me, since since you were the party that was perhaps most affected by the verdict, why did you let the jury. I'm sorry. Why did you not raise the issue before the jury was let go? I can't tell you that it was some great theory that we made to let the jury walk out before we figured out that there was an inconsistent verdict. That is something that we missed. And the time that we got the verdict and we were looking through what it meant, the judge said goodbye to the jury and asked if we had any questions. And at the moment we we did not. So that was a if it were a forty nine B general verdict, that would be the end of the case. But the fact that it was a special verdict under forty nine A and the way the law applies to our to the requirement that you ask the jury to reconsider, it doesn't apply to forty nine A. So our failure to ask the jury to reconsider its answers at that time is not lethal, doesn't kill our appeal. But you'd agree that if we concluded this was a forty nine B as the district court did, it's over for you. Yes. Yes. That's the that's the clear law. We're not arguing that that should be any different. But we're arguing what would prevent us from finding, as you said, that it was a forty nine A. But given what we see and the answers to question one and two, find that the appropriate remedy here is not a new trial, but is to mold the verdict. Is there anything under our forty nine A jurisprudence that would prevent that? No. Forty nine A does not allow that if you cannot reconcile the verdict. I'm sorry. I asked if there's anything our jurisprudence that would prevent us from saying a new trial is not warranted based upon the specific facts of this. The case law says that in the case of a special verdict, when it is irreconcilable, the only remedy then is a new trial. What controlling case? I believe Polaris says that in its discussion of the difference between a general verdict and a special verdict, that's primarily the case that that addresses it in. Well, it's a section of the of the opinion section being entitled inconsistent verdicts. Yeah. Yeah. As long as you're on the Polaris case, deal with the statements in that that a special verdict is a form where the jury answers only special findings on each issue of fact. The jury needs no instruction on the law because the court applies the law to the facts as found by the jury. Wasn't the jury here instructed on the law? Only very generally in the way that that your honor pointed out that the jury is instructed to apply the law to the facts. There was there was more in the jury instruction than the you are to reach a just verdict, right? Yes. OK, there was. It basically parroted what was in the what was in the questions, the fact questions that the jury need to answer in the verdict form. It's improper to instruct. So if the if the jury was given instructions about what the nature of the law was and it was given a form in which it was asked to assign liability under the terms of Polaris itself, isn't that doesn't that take it out of the realm of of special verdict? Particularly when we cited with approval the Portage case from the Sixth Circuit that says the jury's sole function is to determine the facts when there's a special verdict. I agree in this case. I agree with that, your honor. And in this case, what we have is we have the jury finding only facts in the questions that are at issue. There is no question in there that is a legal question that is providing a general verdict. They are answering. When they violate, did they violate the law? And and and even more to the point, when you say to somebody you're liable, aren't you making a statement about liability, which is beyond the facts? There is no statement in this that says you are liable. There is. Which is the point it's got to be. There's it's implicit, is it not, in dividing up the liability? You can't answer that question without answering the question of liability. You can't assign percentages of fault unless there's fault. It's it's implicit. There's no way around that, is there? Absolutely, your honor. What the jury was asked to do and what they did was not say, is any party at fault? They ask a question. Does this violate the LIA? And it gave the specific provisions of the point. Need two questions. One, two, three. I'm talking about question for question for asks for apportionment of liability, doesn't it? Absolutely. OK. How can you have a portion of liability unless you've made a statement or making a judgment about liability? Because if you find yes to the questions, then the conclusion is that you have found liability. That is very different than finding liability as a legal question. What the jury did was they answered facts and under the special verdict form, their answer to those facts determined whether there was liability or not. There's a difference between answering the facts and then concluding that you have liability and answering the ultimate liability question. And if I may, if this is not a special verdict, what is? I suppose one which is solely asking fact questions, as the Sixth Circuit said, but we do have your argument. Appreciate counsel coming in and helping us with this. Thanks, Mr. Petit. We've got the matter under advisement. Thank you very much.